**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TIKI BOATWORKS, LLC,

                              Plaintiff,

        v.                                                      1:20-cv-907
                                                                (TJM/DJS)
CRUSIN' TIKIS, LLC, and GREGORY
B. DARBY, Individually and d/b/a
Crusin' Tikis,

                              Defendants.

_____

**Thomas J. McAvoy, Sr. U.S.D.J.**


                              **ORDER**

        Before the Court is Defendants' motion to dismiss or stay the case and compel

arbitration.  See dkt. # 4.  Plaintiff opposes the motion.

**I.       BACKGROUND**

        This case concerns a licensing agreement between the parties.  The licensing

agreement permitted the Plaintiff, Tiki Boatworks, LLC ("Tiki Boatworks"), to manufacture,

market, promote, sell, and distribute certain boats that Defendant Gregory Darby, who

controlled Defendant Crusin' Tikis, LLC ("Crusin' Tikis"), had designed.  Plaintiff claims

that Defendants fraudulently induced it into signing the agreement by claiming ownership

of a patent for the boat design that meant that no one could sell, market, or deliver boats

of a similar design without Defendants' permission.  See Complaint ("Complt."), dkt. # 1-1.

Plaintiff alleges this claim was untrue, and that Defendant knew it was false.  Plaintiff

                                    1

contends that Defendants failed to provide blueprints, schematic designs, and materials lists for the boats.  Defendants also allegedly refused to share promised technical assistance in constructing the boats. Defendants further failed to provide Plaintiff promised assistance with marketing and access to their website.  Defendants also allegedly disrupted Plaintiff's business by keeping funds paid to Defendants for boats manufactured and delivered by the Plaintiff.  Plaintiff also alleges that Defendants interfered with a contract negotiated by Plaintiff for the construction of a number of boats.

Plaintiff filed a Complaint in the Supreme Court of Albany County, New York, on July 20, 2020.  Defendants removed the case to this Court, citing diversity jurisdiction, on August 11, 2020.  See dkt. # 1.  The Complaint contains Four Counts.  Count One appears to be a claim fo fraudulent inducement against both Defendants.  See Complt. at ¶ 83.  Count Two appears to be a claim of fraud against Defendant Crusin' Tikis.  Count Three alleges that "as a result of the fraud of the defendants, the writing known as the License Agreement dated November 18, 2016 is void and without force and effect," but further alleges that "the defendants continuously breached the License Agreement from November 18, 2016 and continuing daily through January 2018."  Id. at ¶ 108.  This count appears to be a claim for breach of contract.  Count Four seeks an accounting.

After service of the Complaint, Defendants filed the instant motion.  Defendants contend that a binding arbitration agreement exists, and that the Court must dismiss the Complaint as a result.  Plaintiff opposes the motion, contending that the agreement is not enforceable.

## II.   LEGAL STANDARD

Defendants here seek to compel arbitration pursuant to the Federal Arbitration Act ("FAA").  That Act "requires courts to place arbitration agreements 'on equal footing with all other contracts."  Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 137 S.Ct. 1421, 1424 (2017) (quoting DIRECTV, Inc. v. Imburgia, 577 U.S. ____, ____, 136 S.Ct. 463, 468 (2015)).  As such, the statute "makes arbitration agreements 'valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.'"  Id. at 1426 (quoting 9 U.S.C. § 2).  The law preempts state laws that establish special rules for interpreting contracts to arbitrate.  Id.  Under the Act, a party can petition the district court "for an order directing that such arbitration proceed in the manner provided for in the agreement."  9 U.S.C. § 4.  The Arbitration Act "is founded upon 'a desire to preserve parties' ability to agree to arbitrate, rather than litigate, [their] disputes.'"  Starke v. Squaretrade, Inc., 913 F.3d 279, 288 (2d Cir. 2019)(quoting Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012)).  Though federal law favors arbitration, "arbitration remains a creature of contract."  Id.  "Thus, courts must still decide whether the parties to a contract have agreed to arbitrate disputes."  Id.  "That question is governed by state-law contract principles."  Id.

## III.   ANALYSIS

The parties agree that they entered into a licensing agreement.  That agreement contained the following provision:

> 22.10 Disputes.  Any controversy, claim or dispute arising out of or relating to this Agreement, shall be settled by binding arbitration in Broward County, Florida.  Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of The American Arbitration Association, with the following exceptions if in conflict: (1) one arbitrator shall be chosen by Licensor; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by

3

the arbitrator; and (c) arbitration may proceed in the absence of any party if written notice (pursuant to the Arbitrator's rules and regulations) of the proceeding has been given to such party.  The parties agree to abide by all decisions and awards rendered in such proceedings.  Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as the basis of judgment and of the issuance of execution for its collection.  All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity, provided however, that nothing in this subsection shall be construed as precluding bringing an action for injunctive relief or other equitable relief.  The arbitrator shall not have the right to award punitive damages or speculative damages to either party and shall not have the power to amend this Agreement.  IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE, THEN EACH PARTY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO.

Dkt. # 1-2 at § 22.10.

Plaintiff does not dispute that the agreement in question compels arbitration of the claims it raises in the Complaint, with the exception of any request for punitive damages. Instead, Plaintiff points to two grounds for the Court to decide not to permit arbitration: (1) fraud led to the creation of the agreement in the first place; and (2) the agreement is unconscionable and unenforceable.[1]  The Court will address those issues in turn and then

---

[1]Defendants argue that "any dispute as to which state's laws apply to Plaintiffs' claims must be decided by an arbitrator.  The parties agreed that Florida law would govern any disputes between them."  They point out that, under Florida law, an arbitration agreement is enforceable "where, as here, (1) a valid agreement to arbitrate exists; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived."  Defendants' Brief, dkt. # 4-3, at 10 (citing Seifert v. U.S. Homes Corp., 750 So.2d 633, 636 (Fa. 1999); AMS Staff Leasing, Inc. v. Taylor, 158 So.3d 682, 686 (Fla. 4th DCA 2015); Bland v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 255 (Fla. 2d DCA 2006).  Defendants then rely on New York and Second Circuit law to argue that the agreement is valid and enforceable. They make no more mention of Florida law.  Similarly, Plaintiff's argument that the arbitration agreement is not enforceable relies on New York law, with a single reference to Florida law.  Defendants did not file a reply, and thus do not appear to challenge Plaintiff's contention that the Court should apply New York law to these questions.  Since the parties

decide whether punitive damages are arbitrable under the contract

## A.    Fraud

Plaintiff first argues that the arbitration agreement is not enforceable because Defendant Darby "induced" Plaintiff to enter into the agreement "with false assertions that no one could market, manufacture and deliver Tiki boats without Mr. Darby's expressed permission."  Darby also falsely claimed in the licensing agreement that he had a patent on the boats, had "full design and construction drawings . . . , blueprints and a complete list of all necessary machinery used for its construction[.]"  Plaintiff entered into the agreement because it believed Tiki Boatworks would receive this material.  As a result, Plaintiff claims, "Defendants cannot reasonably assert that even a sentence of the agreement is enforceable, let alone the so-called arbitration agreement, because the entire agreement was fraudulently obtained based on a series of lies rendering the entire agreement unenforceable on its face."

Normally, if "the parties have agreed to a broad arbitration clause, the issue of fraud in the inducement is one for the arbitrator."  Information Sciences, Inc. v. Mohawk Data Science Corp., 43 N.Y.2d 918, 920 (N.Y. 1978).  Plaintiff here argues that the rule does not apply because of the nature of the fraud involved.  "Under both federal and New York law, it is settled that unless there was a 'grand scheme' to defraud that permeated the entire agreement, including the arbitration provision, a broadly worded arbitration provision will be deemed separate from the substantive contractual provisions and the agreement to

---

are inconsistent about which law to apply but largely rely on New York law, the Court will do the same.  The Court notes, however, that the licensing agreement between the parties provides that: "[t]his Agreement will be governed by, and construed exclusively in accordance with the laws of Florida."  Licensing Agreement, at § 22.1.

arbitrate valid despite the underlying allegation of fraud." <u>Stellmack Air Conditioning & Refrigeration Corp. v. Contrs. Mgmt. Sys. of NH, Inc.</u>, 298 A.D.2d 956, 957 (3d Dept. 2002). "'To demonstrate that fraud permeated the entire contract, it must be established that the agreement was not the result of arm's length negotiation, or the arbitration clause was inserted into the contract to accomplish a fraudulent scheme.'" <u>Markowits v. Friedman</u>, 144 A.D.3d 993, 997 (2d Dept. 2016) (quoting <u>Anderson St. Realty Corp. v. New Rochelle Revitalization, LLC</u>, 78 A.D.3d 972, 974 (N.Y. 2010)).

Plaintiff contends that "[i]f Tiki boat patents exist, Defendants are not the owner(s)–yet they are falsely claimed to be for the purpose of inducing Plaintiff into the agreement." Moreover, Plaintiff contends, Defendant Darby's claim that he owned the patents in question and that Plaintiff could not manufacture a Tiki boat without Defendants' permission created a "warped reality" that put all of the bargaining power in their hands. Plaintiff thus argues both that the arbitration clause in the contract served to accomplish a fraudulent scheme and that the parties did not negotiate the agreement at arms length.

The Court is not persuaded that fraud permeated the entire agreement. First, courts are clear that simple fraud in the inducement of a contract does not provide grounds for avoiding an arbitration agreement. "'To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury.'" <u>Ferrarella v. Godt</u>, 131 A.3d 563, 570 (2d Dept. 2015) (quoting <u>Sekolow, Dunaud, Mercadier & Carreras LLP v. Lacher</u>, 299 AD2d 64, 70 (NY 2002)). Here, Plaintiff's claim is that the promise that Darby had patents for the Tiki boats convinced Plaintiff to enter into an agreement, and that the lack of an actual patent undermined the value of the agreement.

6

Without that promise, Plaintiff claims, Tiki Boatworks would not have entered into the contact.  That Defendants allegedly engaged in fraud in the inducement does not demonstrate that fraud pervaded the entire contract, however.  As Plaintiff offers no other evidence of fraud, the Court finds that Plaintiff has not alleged that fraud permeated the agreement.

As to Plaintiff's claims that the agreement was not negotiated at arms length, the Court notes that both parties to the agreement were operating as commercial businesses. Plaintiff alleges that "at all times hereinafter mentioned, the plaintiff was and is a New York Limited Liability Company, duly organized and existing under the laws of the State of New York."  Complt. at ¶ 1.  The Plaintiff had an "office and principal place of business" in one location in Albany, New York and another "office for the transaction of business" at another address in that city.  Id. a ¶¶ 2-3.  Plaintiff further alleges that Tiki Boatworks began when "members of the Dark Bay Yacht Club, LLC created and organized a New York business entity named Tiki Boatworks, LLC, for the purpose of entering into an agreement with the defendant Darby to obtain a license to manufacture, market, promote sell and deliver Crusin' Tiki Boats."  Id. at ¶ 20.  Plaintiff, as Tiki Boatworks, LLC, then "entered into further negotiations with the defendant Darby to obtain a license to manufacture, market, promote, sell and deliver Crusin' Tiki Boats."  Id. at ¶ 21.  These allegations indicate that the licensing agreement was "negotiated at arm's length between two sophisticated parties[.]" Castano v. Zee-Jay Realty Co., 55 A.D.3d 770, 772 (2d Dept. 2008).  Plaintiff grew out of a predecessor organization whose members organized Tiki Boatworks to take advantage of a business opportunity by negotiating for a licensing agreement of a product they thought they could exploit in the upstate New York area.

7

They were also sophisticated enough to establish a legal entity that limited their liability. Plaintiff has not alleged that the transaction did not take place at arm's length merely by claiming that Darby misrepresented elements of the transaction and Plaintiff's representative believed him.

Plaintiff also does not even attempt to argue that the arbitration provision got placed in the agreement as a means of accomplishing a fraudulent scheme. Instead, Plaintiff repeats its claim of fraudulent inducement, without even referencing the arbitration agreement. In any case, the Court is persuaded that the arbitration provision can address claims of fraud in the inducement, and that Plaintiff's complaint does not contain a plausible allegation that fraud permeated the agreement.

**B.    Unconscionability**

Plaintiff next argues that the agreement cannot be enforced because the contract is unconsionable. "'It is clear that questions of contractual validity relating to the unconscionagbility of the underlying arbitration agreement must be resovled first, as a matter of state law, before compelling arbitration pursuant to the" Arbitration Act. Nayal v. HIP Network Servs. IPA, Inc., 620 F.Supp.2d 566, 570 (S.D.N.Y. 2009) (quoting Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003)). The parties here apply New York law in addressing this question.

As a general matter, "'[t]he doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties.'" Spinelli v. NFL, 908 F.3d 185, 208 (2d Cir. 2018) (quoting United States v. Martinez, 151 F.3d 68, 74 (2d Cir. 1998)). In New York, "a contract is unconscionable when it 'is so grossly unreasonable or unonscionable in the light of the

8

mores of business practices of the time and place as to be unenforcible [sic] according to its literal terms.'" Nayal, 620 F.Supp.2d at 571 (quoting Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 534 N.E.2d 824, 828 (N.Y. 1988)).  A party must "generally" demonstrate both procedural and substantive unconscionability.  Id.  "'The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se.'" Id. (quoting State v. Wolowitz, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (2d Dept. 1983))

Plaintiff contends that the contract is both procedurally and substantively unconscionable.  As to procedural unconscionability, Plaintiff argues that Tiki Boatworks' representative was:

> an entrepreneur on a quest to build a Tiki boat business, was told that he could not pursue his ventures without permission of Defendants–the holders of the blueprints, patents, and other materials required to manufacture the Tiki boats.  Defendants employed "deceptive [and] high-pressured tactics" to get the Plaintiff to agree to the Licensing Agreement.  See Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11 (1988) (deceptive and high-pressured settings may meet the procedural element of unconscionability).

Plaintiff's Brief at 9.  Because of such sales tactics, Plaintiff claims, this entrepreneur felt he had no choice but to agree to the contract.   Because of their deceptions about ownership of the patents and Plaintiff's inability to sell boats without them, "Defendants created a world in which they held control in its entirety, and Plaintiff was left with no choice: sign the License Agreement, or else you cannot pursue the Tiki boat business venture." Id. at 10.

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." Gillman, 73 N.Y.2d at 10-11.  Courts are to "focus . . . on such matters as the size and commercial setting of

9

the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." Id. at 11. Factors weighing against procedural unconscionability can include cases where "agreements were entered into by sophisticated parties as part of a normal commercial transaction, there is no evidence of deceptive or high-pressure tactics, [an] agreement contains 'fine print,' and there was no disparity in bargaining power." Mazursky Group, Inc. v. 953 Realty Corp., 166 A.D.3d 432, 433 (1st Dept. 2018).

Despite claims of deceit regarding Defendants' ownership of patents, Plaintiff has not alleged facts that support a claim of procedural unconscionability. Plaintiff's negotiator admits to being an entrepreneur seeking to enter a new sort of business. The process described above of Plaintiff's attempt at creating a commercial enterprise with plans to sell a large number of manufactured boats indicates that both sides of the agreement operated from a sophisticated perspective. Plaintiff does not allege that agreement contained fine print that contradicted the claims Darby made in negotiating the agreement. While Plaintiff claims "high pressure" sales tactics, those tactics consisted of Defendants arguing that Plaintiff needed to work with Defendants if they hoped to produce proper Tiki Boats or be sued. Plaintiff does not allege an unreasonable time limit on negotiations, however, and Tiki Boatworks' complaints here appear to point more to a common business negotiation tactic in deals among sophisticated and well-financed parties than an unequal negotiation between an individual and a powerful counterparty who holds all the cards. The facts alleged here do not describe a situation where a "sophisticated part[y] with grossly unequal bargaining power [took] advantage of [a] less sophisticated part[y].'"

10

Spinelli, 908 F.3d at 208.  The facts here indicate a situation where two sophisticated parties negotiated a commercial contract where one party later felt misused on the deal.  That situation does not describe procedural unconscionability.

As to substantive unconscionability, the court undertakes "an examination of the substance of the Agreement in order to determine whether the terms unreasonably favor one party." Brower v. Gateway 2000, 246 A.D.2d 246, 254 (1st Dept. 1998).  This "substantive element alone may be sufficient to render the terms of the provision at issue unenforceable." Id.  Plaintiff complains that the arbitration provision is uncoscionable in this respect because Defendants have sole power to choose the arbitrator, and any decision by the arbitrator is "final and conclusive."  Plaintiff also contends that the arbitration provision in the licensing agreement is labeled as "Miscellaneous," not as an arbitration provision.[2]

The court finds that the arbitration provision is not substantively unconscionable.  First, Plaintiff's complaint that the arbitration provision is not labeled as an arbitration provision does not point to unconscionability.  Plaintiff's argument leaves out the fact that the provision, part of the miscellaneous category at the end of the document, is labeled "disputes," and sets out the agreed-upon procedure for resolving disputes, which involves arbitration.  The provision is not hidden from anyone who chooses to read to the end of the contract, and explains clearly the procedures for resolving disputes.  As to providing

_____

[2]Plaintiff cites to Paduano v. Express Scripts, Inc., 55 F.Supp. 3d 400 (E.D.N.Y. 2014) for the proposition that a provision that limits the right to appeal an arbitrator's decision renders the agreement procedurally unconscionable.  Paduano, however, applies Arizona law, not New York or Florida law, and in that way does not aid the Court's analysis here.

sole power to the Defendants to choose the arbitrator, the fact that Defendants choose an arbitrator does not determine the outcome of the arbitration, but merely the identity of the arbitrator.  Moreover, a party might reasonably choose to forego the time and expense of choosing an alternative arbitrator.  The arbitration agreement also requires the arbitrator to abide by the rules of the American Arbitration Association, and thus provides guidelines for the decision.  The Court is also not persuaded that the lack of a right to appeal an arbitrator's award makes the agreement unconscionable.  The parties agreed to arbitration, a method of dispute resolution designed to promote efficiency and fast resolution by avoiding the courts.  That an arbitration agreement contains such a provision is hardly surprising, and Plaintiff has not cited to New York or Florida law that finds unconscionability solely on that basis.

In the end, the Court cannot find that the arbitration agreement, the product of negotiations between two sophisticated parties establishing the rules for a commercial transaction involving the construction of complicated machines, is not the sort of agreement that can be found unconscionable.  That agreement is not "'so grossly unreasonable or unconscionable in the light of the mores of business practices of the time and place as to be unenforcible [sic] according to its literal terms." Nayal, 620 F.Supp.2d at 571 (internal citations omitted).

The Court therefore finds that the arbitration agreement is enforceable and the Defendants' motion should be granted.

### C.    Punitive Damages

Plaintiff points out that the arbitration agreement establishes that the arbitrator cannot award punitive damages, which Tiki Boatworks sought in the Complaint in relation

12

to their fraud count.  Plaintiff claims that the fact that the Complaint alleges claims that give rise to potential punitive damages precludes the Court from enforcing the arbitration provision.  In New York, an arbitrator cannot award punitive damages, and thus the case cannot be arbitrated because Plaintiff seeks punitive damages.

The Court is not persuaded by this argument.  The Federal Arbitration Act preempts state laws that attempt to prevent arbitration.  Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 42, 55-56 (1995).  Parties can construct arbitration agreements that, for instance, permit arbitrators to award punitive damages even though state law prohibits such action. Id. at 63-64.  The arbitration agreement the parties signed determined to resolve all disputes arising out of their agreement in arbitration, and also agreed that the arbitrator could not award punitive damages.  To permit Plaintiff to avoid arbitration by filing a Complaint in this court that sought damages the parties expressly agreed to forego would be to invalidate a valid arbitration agreement and undermine the purposes of the FAA. The Court does not have the power to do so.

## IV.  CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss and compel arbitration, dkt. # 4,  is hereby **GRANTED**.   The Clerk of Court is directed to **CLOSE** the case.


**IT IS SO ORDERED**.

Dated: March 30, 2021

Thomas J. McAvoy
Senior, U.S. District Judge